IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.16-cv-01941-MJW

TRAVIS CUNNINGHAM, as the biological father, legal guardian, and next friend of the minor child, HC;
JERALDINE SKINNER; and
SANG YOON,

Plaintiffs,

v.

CHRISTINE HOFF, individually and acting in her official capacity as a City of Aurora Municipal Prosecutor;
JOSEPH BUCCERI, individually and acting in his official capacity as a City of Aurora Municipal Prosecutor;
OFFICER DANIEL SMICK, individually and acting in his official capacity as a City of Aurora Police Officer,

Defendants.

## ORDER ON
## DEFENDANTS' CORRECTED MOTION TO DISMISS (DOCKET NO. 18)

**Entered by Magistrate Judge Michael J. Watanabe**

This case is before the court pursuant to the parties' consent to jurisdiction of magistrate judge. (Docket No. 32.) Now before the court is Defendants' Corrected Motion to Dismiss (Docket No. 18). Plaintiffs filed a response (Docket No. 31) and Defendants filed a reply. (Docket No. 35.) The court has carefully considered the motion. The court has taken judicial notice of the court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law, and order.

1

# I. BACKGROUND

**a. Relevant Facts**

The facts recounted below are based on Plaintiffs' allegations. The court assumes these facts and allegations are true for purposes of a motion to dismiss.

Plaintiffs are three individuals who each allege that they were unjustly prosecuted in the City of Aurora ("Aurora") Municipal Court. Defendants Christine Hoff and Joseph Bucceri are Aurora city attorneys. Defendant Daniel Smick is an Aurora police officer. All Defendants are sued in their official and individual capacities.

Plaintiff Skinner, who is "elderly and disabled," received a summons to appear in Aurora Municipal Court after she had some sort of dispute with her young, "muscle-bound" neighbor on May 2, 2015. Prior to the pretrial hearing, held a month later, the neighbor threatened to assault Skinner and her counsel, which was reported to Aurora police. A trial was set for July 2, 2015, but after jury selection, Hoff requested and received a mistrial, claiming that the neighbor was afraid to testify. After Hoff failed to offer a plea bargain, Skinner was eventually tried by a jury on August 20, 2015, during which "Hoff made several misleading statements, comments, and arguments about facts, some not in evidence, in the presence of the jury." The jury found Skinner not guilty.

Plaintiff Yoon was summoned to Aurora Municipal Court for stealing garbage services. Yoon contends that he was just taking the trash out for his vacationing father. Yoon presented supporting evidence to Hoff on January 4, 2016. Hoff refused to dismiss the case and persisted in the prosecution even after Yoon's father appeared in

court and presumably supported his son's claims. Hoff, however, did eventually dismiss the case on January 21, 2016, which was the same day Yoon's counsel subpoenaed the homeowner's association's agents as trial witnesses.

Plaintiff Cunningham was a juvenile on October 23, 2015, the day that he received a summons to Aurora Municipal Court for fighting. He had been jumped at high school and was defending himself. When Cunningham and his father appeared in court, they were told by Hoff that if Cunningham did not accept the plea offer that day, it would be revoked. Cunningham hired legal counsel who learned that an exculpatory video of the fight existed but had been destroyed. On January 19, 2016, Cunningham filed a motion to dismiss based on law enforcement's failure to preserve this evidence. During a February 10, 2016 motions hearing, Bucceri, after speaking privately with Smick, told Cunningham's counsel that Smick made a verbal request to the school to preserve the video. Cunningham contends that this was a lie and offers several reasons to suspect that Bucceri assisted Smick in devising it. Smick gave testimony on February 20, 2016, that was consistent with this supposed falsehood. The judge ruled against Cunningham based on Smick's perjured testimony. Cunningham subsequently found evidence contradicting Smick's story. The charges were eventually dropped on April 13, 2016, by another municipal prosecutor, Andrea Wood.

**b. Procedural History**

Plaintiffs originally filed this action on June 22, 2016, in Arapahoe County District Court. Their Complaint (Docket No. 2) asserts four claims for relief: (1) malicious prosecution; (2) abuse of process; (3) violations of their constitutional rights under 42 U.S.C. § 1983; and (4) injunctive relief-specific performance in the form of Defendants'

3

"immediate abatement of actions complained herein, and resignation from all positions held within the City of Aurora." On July 29, 2016, Defendants timely removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. Defendants responded to the Complaint by filing the subject motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. (Docket No. 18.)

## II. STANDARDS OF REVIEW

### a. Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the case at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006)

### b. Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to

dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th

5

Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

### III. ANALYSIS

#### a. 42 U.S.C. § 1983 Claims for Damages and Injunctive Relief

Plaintiffs bring a claim against Defendants, both in their individual and official capacities, for violations of their constitutional rights under 42 U.S.C. § 1983. Plaintiffs also seek injunctive relief "in the form of the defendants immediate abatement of the actions complained herein, and resignation from all positions held within the City of Aurora." (Docket No. 2 at 8.)

"To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). However, "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Id.* (internal cites and quotes omitted).

Plaintiffs plead their § 1983 claim as follows:

6

> The following averments establish that these governmental defendants violated and deprived the plaintiffs from state and federal constitutional and statutory rights including but not limited to: denial of presumption of innocence; lack of probable cause; denial of due process; 5th Amend., 6th Amend.; 14th Amend.; Colo. Const. art. II, §§ 3, 6, 8, 16, 18, and 25; C.M.C.R. 200 et. seq.; Colo. Crim. R. Proc.; Colo. Rev. Stat. Titles 16 and 18; CJI-Civ. 17:10(A)-(B); and 42 U.S.C. §§ 1983 - 1988.

(Docket No. 2 ¶ 16.)

In order to state a claim in federal court a plaintiff must explain (1) what a defendant did to him; (2) when the defendant did it; (3) how the defendant's action harmed him; and (4) what specific legal right the defendant violated. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). These constitute the basic "elements that enable the legal system to get weaving—permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits." *Id.* Failure to meet the basic standards required by Fed. R. Civ. P. 8 will lead to dismissal under Fed. R. Civ. P. 12.

Plaintiffs allegations do not identify which Defendants were responsible for which deprivations of liberty. They do not state what specific legal rights were violated or by whom. Indeed, the string of citations to whole titles of the Colorado Revised Statutes and the entire Colorado Rules of Criminal Procedure render this allegation so broad as to be meaningless.

As a result, the parties often argue past each other in the briefing on Defendants' motion. Defendants read Plaintiffs' Complaint to assert essentially only two claims for relief: malicious prosecution and abuse of process, both brought under § 1983. Plaintiffs, on the other hand, make it clear in their responsive filing that their § 1983

7

claim is not premised on malicious prosecution or abuse of process, which they characterize as state law tort claims. What their § 1983 claim *is* premised on, however, is indecipherable. The court doubts that Plaintiffs themselves even know. For example, while they maintain that their § 1983 is not based on abuse of process, the above averment specifically cites (for whatever reason) the Colorado Civil Jury Instruction for the tort of abuse of process tort. Under these circumstances, Plaintiffs' Complaint provides neither the Defendants nor the court with specific allegations as to the legal rights Defendants are alleged to have violated.

This lack of specificity is fatal to Plaintiffs' claim for injunctive relief, as will be discussed below. However, for purposes of damages, the court has enough information to determine that Plaintiffs fail to state a claim against Defendants in their official capacity and that Defendants would be immune from liability even if Plaintiffs' Complaint was sufficiently and plausibly pled. For this limited purpose, the court outlines Plaintiffs' claims as follows. Plaintiff Skinner's claim against Defendant Hoff is based on Hoff's decisions to (1) request for and receive a mistrial; (2) retry Skinner; and (3) during that trial, make false or misleading statements. Plaintiff Yoon's claim is also against Hoff and is based on her decision to not dismiss the case after being informed of evidence that exonerated Yoon. Plaintiff Cunningham alleges that Hoff pressured him to take a plea deal, which amounted to an attempt to punish him for seeking counsel. Cunningham also alleges that Defendants Bucceri and Smick conspired to put on perjured testimony about Smick requesting the exculpatory video of the altercation during a motions hearing, and then did put on perjured testimony.

### 1. Claims Against Defendants in their Official Capacity

Claims against local officials in their official capacity are simply another way of pleading an action against an entity of which an officer is an agent. *Kentucky*, 473 U.S. at 165. Thus, Plaintiffs' official capacity claims are brought against the City of Aurora. To establish municipal liability under § 1983, Plaintiffs must demonstrate: (1) that the city officials committed an underlying constitutional violation; (2) that a municipal policy or custom exists; and (3) that there is a direct causal link between the policy or custom and the injuries alleged. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).[1]

In addition to failing to state with any specificity what constitutional violations were committed, Plaintiffs' Complaint also does not, as a matter of law, demonstrate that any customs, policies, or practices of Aurora were the driving force behind Defendants' allegedly unconstitutional actions. Plaintiffs point to no formal or official policies promulgated by Aurora. Instead, they allege that Defendants' "tactics are a pattern or habitual practice of the Aurora City Attorney Office" and that "[b]ecause of the breadth and length of this pattern or practice, not to mention the notorious reputation this office has in the community, prosecutors . . . have training or protocols put in place . . . that perpetuate this type of conduct." (Docket No. 2 ¶¶ 14-15.)

There are several problems with this argument. First, the facts of the individual Plaintiffs' cases are not similar enough to support their contention that some sort of policy motivated Defendants to violate Plaintiffs' rights. For example, the case against

---

[1] Contrary to the assertion contained in the Complaint (Docket No. 2 ¶¶ 4-5), municipal liability in a § 1983 case cannot be established on a theory of vicarious liability. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

Plaintiff Skinner was taken to trial while those against Yoon and Cunningham were dismissed. Plaintiff Cunningham was a juvenile while Skinner was elderly. Cunningham alleges that Defendants conspired to commit perjury and tried to intimidate him into not seeking legal advice; neither Skinner and Yoon make analogous claims. In short, no custom or policy can be deduced from these factually disparate cases.

Nevertheless, Plaintiffs argue that the "Complaint itself is direct and circumstantial evidence of the existence of a municipal policy, pattern, practice[,] or custom having occurred to three separate individuals in a year." (Docket No. 31 at 11.) Not only is this reasoning circular, it presumes too much. Three cases in a twelve month period, even assuming all of the facts as alleged are true, is simply too small a sample size to support an inference that Aurora maintains constitutionally dubious customs or policies. This is especially true because Plaintiffs provide no context for the figure. Three cases out of ten might show a pattern; three cases out of hundreds or thousands means next to nothing. Moreover, the assertion in their response that the named Plaintiffs constitute a "random, blind sampling" of those prosecuted by Aurora is wholly unsupported by the allegations in the Complaint or any extrinsic evidence provided to the court.

Tellingly, Plaintiffs' claim that the Aurora City Attorney's Office, as a matter of policy or custom, violates the rights of those accused of municipal offenses is undermined by their admission that prosecutor Andrea Wood exhibited good judgment in dismissing Cunningham's case. Plaintiffs do not attempt to explain this discrepancy. The most obvious answer is that Aurora city attorneys exercise their broad prosecutorial discretion as they see fit and in ways that can vary from prosecutor to prosecutor. Such

an interpretation certainly does not support Plaintiffs' vague and conclusory allegations of systemic misconduct.

For these reasons, the court finds that Plaintiffs cannot maintain official capacity claims against Defendants Hoff and Bucceri.

Finally, while Plaintiffs' Complaint only vaguely references customs, policies, and practices implicating the Aurora City Attorney's Office, it is completely silent regarding the Aurora Police Department, which employed Defendant Smick. Given that Plaintiffs have failed to identify any policy or custom of the police department as the moving force behind Smick's alleged violations of Cunningham's rights, the court will only consider his individual liability.

### 2. Claims Against Defendants in their Individual Capacity

Individual liability under § 1983 applies whenever an officer of a local government acts under color of state law to deprive an individual of a constitutional right. *Kentucky,* 473 U.S. at 166. Local government officials sued in their individual capacity under § 1983 may assert defenses of qualified or absolute immunity. A claim of immunity is an "immunity from suit" and not a "mere defense to liability." *Siegert v. Gilley*, 500 U.S. 226, 233 (1991). Defendants argue that they are immune from suit. Specifically, Defendants maintain that Hoff and Bucceri, as prosecutors, are entitled to absolute immunity, and that Smick is entitled to qualified immunity as a law enforcement officer. For the reasons set forth below, the court finds that all Defendants are entitled to absolute immunity, and that Plaintiffs' § 1983 claim for damages must be dismissed.

### i. Defendants Hoff and Bucceri

The Supreme Court has held that a prosecutor is absolutely immune for activities which are "intimately associated with the judicial [process]" such as initiating and pursuing a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Prosecuting attorneys are absolutely immune from suit under § 1983 for decisions to prosecute, *Hammond v. Bales*, 843 F.2d 1320, 1321 (10th Cir.1988), and to not prosecute. *See Dohaish v. Tooley*, 670 F.2d 934, 938 (10th Cir.1982). Moreover, absolute immunity extends to "liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution." *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000). Prosecutorial immunity "does not extend to actions that are primarily investigative or administrative in nature, though it may attach even to such administrative or investigative activities when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court." *Snell v. Tunnell*, 920 F.2d 673, 693 (10th Cir.1990). Generally, "the more distant a function is from the judicial process and the initiation and presentation of the state's case, the less likely it is that absolute immunity will attach." *Id.* at 687.

It is obvious to the court that Defendants Hoff and Bucceri are entitled to absolute immunity. They were acting in their capacities as Aurora City Attorneys in their interactions with Plaintiffs. There are no allegations that either performed any investigatory or administrative functions in relation to the charges brought against Plaintiffs. These prosecutors were not involved in the decision to arrest or serve the summons on Plaintiffs. Instead, it is uncontested that they were only involved **after** the

12

charges were brought. (Docket No. 2 ¶¶ 17(b), 18(b), & 19(b)-(l).) Thus, Hoff and Bucceri were acting in their roles as advocates for the city and their actions, including evaluating evidence, speaking to witnesses, and taking cases to trial, were directly related to their prosecutorial functions.

Accordingly, absolute prosecutorial immunity acts as a complete bar to Plaintiffs' § 1983 claims for damages against Defendants Hoff and Bucceri.

### i. Defendant Smick

Prosecutors are not the only individuals who may be entitled to absolute immunity. A witness sued under § 1983 enjoys absolute immunity from any claim based on his testimony. *See Briscoe v. LaHue*, 460 U.S. 325 (1983). This applies to trial witnesses, *id.* at 326, grand jury witnesses, *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012), and those who testify at criminal preliminary hearings. *Handy v. City of Sheridan*, 636 F. App'x 728, 742 (10th Cir. 2016) (unpublished).[2] Absolute immunity is even afforded to testimony that the witness knows to be false. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010). It is settled law that absolute immunity protects police officer witnesses. *Briscoe,* 460 U.S. 325 at 342-344. This immunity exists because a witness' fear of retaliatory litigation may influence their testimony and because other sanctions for false testimony, chiefly prosecution for perjury, provide a sufficient deterrent. *Rehberg*, 566 U.S. at 367.

---

[2] Although the Tenth Circuit had previously rejected the availability of absolute immunity when a police officer testifies in a pretrial hearing as a "complaining witness" as opposed to a lay witness testifying at trial, *see Anthony v. Baker*, 955 F.2d 1395 (10th Cir.1992), that distinction was overturned by the Supreme Court in *Rehberg*. *See Handy*, *supra. See also Hinman v. Joyce*, 201 F. Supp. 3d 1283, 1291 (D. Colo. 2016).

With these principles in mind, the court turns to Plaintiffs' claim that Smick violated Cunningham's constitutional rights by committing perjury when Smick stated that he made verbal requests to the school to preserve the video of Cunningham's fight. Even assuming that Cunningham's narrative of events is accurate–that Smick's testimony at the motions hearing was false, that he never spoke to school officials to request that evidence be preserved, and that he lied about doing so in order to avoid dismissal of the case–Smick is shielded from any civil liability allegedly flowing from this testimony. Accordingly, Cunningham cannot maintain a § 1983 claim for damages against Defendant Smick.

### 3. Injunctive Relief

Insofar as Plaintiffs' request for injunctive relief is brought against Defendants in their official capacity, that claim fails because Plaintiffs did not demonstrate the existence of any municipal custom or custom. *See Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 39 (2010) (*"Monell'*s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective.").

As to individual injunctive liability, while absolute immunity shields the Defendants from any § 1983 damages, they may still be liable for declaratory and injunctive relief. *See Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736–37 (1980). However, the inadequacy of the Complaint's § 1983 claim requires that injunctive relief be denied. The court was able to determine that Defendants were entitled to immunity based only on the uncontroverted facts contained in the Complaint because absolute immunity would protect their actions regardless of the precise

14

underlying constitutional violation. This is decidedly not the case in reviewing Plaintiffs' request for injunctive relief. Without knowing what legal rights Defendants may have violated, the court cannot fashion any meaningful equitable or injunctive relief. Moreover, Defendants cannot prepare any meaningful defense if they have no idea what constitutional provisions they are alleged to have violated. For example, should they each have to prepare a defense for a claim that their actions somehow constituted violations of 42 U.S.C.A. §§ 1985 & 1986? These sections are referred to in the Complaint. So are the Colorado Rules of Criminal Procedure. Should it be left to the Defendants' imagination which rules they are alleged to have broken? The court thinks not. Accordingly, Plaintiffs' claim for injunctive relief must be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

### b. Plaintiffs' State Law Claims

Under 28 U.S.C. § 1367(c), the "district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). *See also Keller v. Porter Hosp.*, 265 F. App'x 729, 731 (10th Cir. 2008). The court has determined that Plaintiffs' § 1983 claims against Defendants for damages and injunctive relief must be dismissed. Because Plaintiffs have admitted that their claims for malicious prosecution and abuse of process are state law tort claims, it is within the discretion of the court whether to exercise supplemental jurisdiction over the remainder of the case. The court declines to exercise that discretion. Accordingly, the case will be remanded to Arapahoe County District Court.

## IV. ORDER

Based upon the foregoing, it is hereby

**ORDERED** that Defendants' Corrected Motion to Dismiss (Docket No. 18) is **GRANTED IN PART** and **DENIED IN PART**. Specifically,

Plaintiffs' claim for relief under 42 U.S.C. § 1983 is **DISMISSED WITH PREJUDICE**;

Plaintiffs' claim for injunctive relief-specific performance is **DISMISSED WITHOUT PREJUDICE**; and

Plaintiffs' state law tort claims for malicious prosecution and abuse of process are **REMANDED** to Arapahoe County District Court under Arapahoe County District Court Case No. 16-cv-031565.

BY THE COURT

Date: May 26, 2017
Denver, Colorado

s/ Michael J. Watanabe
Michael J. Watanabe
United States Magistrate Judge